## Goodman *versus* Sanger.

91    71
177   404
91        7
28 SC 1240

1. A deed made by a treasurer to the commissioners of a county for a tract of land sold by said treasurer for taxes, according to the provisions of the Act of March 13th 1815, is not void as against a subsequent purchaser, from the former owner of the land, because the deed was not recorded in the office for recording deeds of the county in which the land was situate, within six months after its execution.

2. In 1813 the county of Columbia was erected out of part of the county of Northumberland, with the right to the latter to collect all unpaid taxes. Certain land was sold for unpaid taxes in 1816, by the treasurer of said county, to the commissioners. The court below held that the deed should have been recorded in Columbia county, and that such a deed was within the recording acts. *Held*, that this was error; that the purchaser of unseated land was bound to examine the records in the commissioners' office, and if he found one county had been carved out of another it was incumbent upon him to search the records of said office in the old as well as the new county.

June 12th 1879. Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ. MERCUR and WOODWARD, JJ., absent.

Error to the Court of Common Pleas of *Columbia county :* Of May Term 1879, No. 35.

Ejectment by John H. Goodman against John Sanger to recover four hundred acres of land in Conyngham township, Columbia county.

On the 10th of January 1794, a warrant was granted to Johnston Besely for four hundred acres of land in Northumberland county ; and in pursuance thereof a survey of four hundred acres and the allowance, on the waters of Catawissa creek, in said county of Northumberland, was made on the 7th of March 1794, and on the 16th of October, in the same year, a patent for this tract of land was granted to Robert Morris. By an Act of Assembly approved the 22d day of March 1813 (Pamph. L. 1812–3, p. 146), the county of Columbia was, on the first Monday of September 1813, erected out of part of Northumberland county, and the land in question has since been situate in Columbia county. By the fifth section of the said act it was enacted " that all taxes or arrears of taxes laid, or which have become due within the said county of Columbia before the passing of this act, and all sums of money due to this Commonwealth for militia fines in the said county of Columbia, shall be collected and recovered as if this act had not been passed."

This Johnston Besely tract was duly assessed with taxes, as unseated land, from 1796 to 1813, both years inclusive, in the county of Northumberland, and the county taxes for the years 1806 to 1813, both inclusive, and the road taxes for the years 1805 to 1810, both inclusive, not having been paid, the tract of land was sold by the treasurer of Northumberland county for these taxes, in 1816,

[*Goodman v. Sanger.*]

after the erection of Columbia county, in due form of law, to the commissioners of Northumberland county, and a deed for the same to the said commissioners, dated the 18th day of July 1816, was duly executed and acknowledged. The commissioners of Northumberland county, at a commissioners' sale, held at the court house in Sunbury, on the 11th day of June 1874, sold this tract of land to John H. Goodman, the plaintiff, for the sum of $10,000, and afterwards by their deed, dated the 1st day of July 1874, and duly executed and acknowledged, conveyed the same to him. This deed, and the aforesaid deed of the treasurer of Northumberland county to the commissioners of that county, were recorded in Columbia county on the 21st day of July 1874.

The defendant, John Sanger, was a tenant of Daniel B. Fisher, Asa Packer, Elisha P. Wilbur and Gideon Bast, who made the defence. The land had been unseated until December 1871, when Fisher and his co-tenants erected a small house upon the premises, and put a tenant in possession. They claimed title under the warrant to Johnston Besely and the patent to Robert Morris, and gave in evidence a deed of Robert Morris and wife, dated the 8th day of July 1795, for this tract and others to John Nicholson, and the proceedings of the Nicholson commissioners, and a sale by them of the Johnston Besely tract, on the 23d of June 1807, to Philip Meyer, who gave his bond, with sureties, for the purchase-money. They also showed payment of this bond, by Valentine Brobst for the estate of Philip Meyer, to the treasurer of the Commonwealth, on the 2d of January 1816, and a deed of the secretary of the Commonwealth, dated the 12th of January 1836, to Franklin P. Meyer, Eliza Leib, Catharine Meyer, Mary Ortlip, Rebecca Meyer and Louisa Epting, children and heirs of Philip Meyer, deceased, for the Johnston Besely tract and three others. They then showed that the title of all the several grantees of the children and heirs of Philip Meyer, had, by sundry conveyances, become vested in them, the said Fisher, Packer, Wilbur and Bast.

At the trial, before Elwell, P. J., the defendant proposed to prove that the purchase-money which formed the consideration of the different conveyances from Meyer's heirs was actually paid by the purchasers. This offer was for the purpose of showing that the defendant's lessors, and those under whom they claimed, were purchasers for value, without notice; and the plaintiff's title not having been recorded, and the conveyances to defendant's lessors being of record, as already given in evidence, the title of the defendant's lessors was protected by the recording acts.

The plaintiff objected: 1. Because the purchasers from Meyer's heirs were bound to know that the land was unseated; had been assessed for taxes, and sold to the commissioners of Northumberland county; and had such notice by the official books and papers

[Goodman *v.* Sanger.]

in the commissioners' office, and of the treasurer's office of Northumberland county; and also by the redemption by Bright for the county in 1840, on the treasurer's sale-book of Columbia county. 2. Because no law requires a treasurer's deed to commissioners to be recorded. The court overruled the objections, and admitted the evidence.

The following were among the points submitted by plaintiff:

3. That the official books from the offices of the commissioners and treasurer of the county of Northumberland, given in evidence, showing the assessments and the sale of the land to the commissioners of Northumberland county, were legal notice to the heirs of Philip Meyer, and to all persons claiming under them, of such assessments and sale for taxes; and also that the entry on the treasurer's sale-book, of Columbia county, of the redemption from the sale of 1838, made by George Bright, for the county of Northumberland, was notice to the purchasers from the heirs of Philip Meyer, of the title of the county of Northumberland.

4. That the fact that the deed of the treasurer of Northumberland county, to the commissioners of the same county, was not recorded in Columbia county before 1874, does not, in any manner, affect the title of the commissioners, or of the plaintiff derived from them, so as to invalidate it or postpone it to that claimed by any persons claiming through Philip Meyer, or any other person.

5. That under the evidence in this cause the verdict of the jury should be in favor of the plaintiff, for the land claimed in the writ of ejectment.

The court did not specifically answer the foregoing points, but in the general charge, inter alia, said:

"The fact that the county of Columbia was erected before this sale, and that the land, from 1813 down, was subject to this county's jurisdiction, are facts which, it seems to me, enter into consideration in disposing of the question now before the court. It is contended on the part of the defendant, that this conveyance from the treasurer to the commissioners of Northumberland county, is within what is known as the Recording Act, which has been read in your hearing, and which, for the purpose of giving notice, and for the purpose of preserving the muniments of title, requires and allows the recording of deeds and other instruments conveying title to land. On the other hand, the counsel for the plaintiff contend that this deed is not within the meaning of the recording law. Upon the best consideration which I am able to give to the question, I am of the opinion that it is within the recording law, and that it was the duty of the commissioners of Northumberland county to have recorded the conveyance in the county of Columbia, for the purpose of notice. * * *

"This plaintiff does not claim to recover any undivided part of the land; he claims to recover the whole; and, in order to raise

[Goodman *v.* Sanger.]

the whole question, I charge the jury : That the defendant claims under persons who hold by deed for a valuable consideration, and without notice of the title of the commissioners of Northumberland county ; and that he has, therefore, the right to maintain and hold his possession ; and that the verdict should be in favor of the defendant."

Verdict for defendant, and after judgment, plaintiff took this writ, and alleged that the court erred in admitting the above evidence, in refusing to affirm the foregoing points, and in the portions of the charge above noted.

*A. J. Dietrick, John G. Freeze* and *Joshua W. Comly*, for plaintiff in error.—A treasurer's deed is not within the recording acts. The parties had notice. The sale of a treasurer requires unusual publicity by publication of notice. It was a public sale, and a deed was made to the commissioners, which remained in a public office. A sheriff's deed does not come within the recording acts, and the publicity of a treasurer's sale is greater than that of a sheriff's. Investigation would have disclosed the deed in Northumberland county, and all the facts. The purchaser was bound to search for outstanding taxes, and such inquiry would have shown when the land was redeemed by Northumberland county. At common law the purchaser was not required to record deed. The law is entirely statutory, and no prudent purchaser of unseated lands will buy them without examining the tax books of the county where lands are situated. Deeds of this character have never, so far as we can ascertain, been recorded in any of the counties of this state.

*George F. Baer, S. P. Wolverton* and *C. R. Buckalew*, for the defendant in error.—The acknowledgment of the treasurer's deed to commissioners, was in the form prescribed by the act, viz., " Acknowledged by the grantors before one of the justices of the peace," &c. It is, therefore, within the exact terms of the recording act.

The acknowledgment of a deed to county commissioners, was not directed by the act to be in open court, as treasurers' deeds to individuals and sheriffs' deeds, were by law required to be acknowledged. No argument against the necessity for recording a treasurer's deed to commissioners, where the land lies in another county, can be drawn from the fact that sheriffs' deeds are not within the recording act. The legislation in the two cases is essentially different. The Supreme Court has given two reasons for holding that sheriffs' deeds are not within the recording act. The one as given in Shrider's Lessee *v.* Nargan, 1 Dall. 72 ; McCormick *v.* Meason, 1 S. & R. 96, and Naglee *v.* Albright, 4 Whart. 297, is, that they are acknowledged in open court, and the minute made by the prothonotary is equivalent to recording. The

[Goodman *v.* Sanger.]

other as given in Seechrist *v.* Baskin, 6 Barr 154, is "that the authentication prescribed for it is acknowledgment before court and not before a magistrate;" this, says the court "shows that it is not within the provisions of the recording laws." Now none of these reasons can be applied to a treasurer's deed to county commissioners.

It is a fallacy to assume that an entry in a commissioners' book, is equivalent to an enrolled decree of a court. The records of one county are not notice to purchasers of land in another. Northumberland county was bound to put her deed on record in Columbia county. There is no theory of law which requires a purchaser in one county to go into another county to get his title. After the five years, the commissioners own the land, just like other individuals, and are within the recording acts.

Mr. Justice TRUNKEY delivered the opinion of the court, June 23d 1879.

The Act of March 13th 1815, which makes it the duty of county commissioners to buy unseated lands at tax-sales requires them to provide a book and enter therein the name of the person as whose estate the same was sold, the quantity of land, and the amount of taxes it was sold for. In that book they shall charge every such tract with reasonable county and road tax, for five years, if the land shall remain so long unredeemed. It may be redeemed within said period by paying the taxes for which it was sold and costs, and the taxes which shall have been assessed from year to year after the sale, with interest, and thereupon the commissioners shall convey the land to the owner, by deed poll, endorsed on the back of the treasurer's deed to them. Such is the prescribed record of their purchase and other proceedings. It is also made the duty of the commissioners' clerk to enter said sales in their book of minutes, and any redemption which may happen, and sales by them after the right to redeem has passed over. An assessment of taxes is essential to authorize a sale, the record of which is kept in the commissioners' office. On that depends the validity of the sale. The assessment, the public sale, the deed, are links in the chain, and if the first two be wanting the owner is not divested of his title. Therefore, a record of the deed only even after the day for redemption has passed, is not enough to show that such title as the owner had is vested in the grantee. The evidence of the authority to sell, of the sale, and of the execution of the deed may be found in the commissioners' office. The law demands that records thereof shall be made and kept there, not at full length, but to such extent as gives ample notice to all persons interested.

When unseated land is sold to one, other than the county, the

[Goodman *v.* Sanger.]

treasurer must acknowledge the deed for the same in open court. For reasons given by GIBSON, C. J., in Seechrist *v.* Baskin, 7 W. & S. 403, such acknowledgment does not authorize an entry of the deed in the recorder's office; nor is the deed itself within the purview of the recording laws. He was speaking of a sheriff's deed and said, " it is a link in a chain of judicial proceeding ; and being already of record it would be as useless to record it over again, for purposes of notice, as it would be to record the other proceedings in the action ; it would occasion perplexity and uncertainty, if purchasers were bound to resort to different offices, as independent sources of information, instead of but one. Such a deed might be beneficially recorded for purposes of preservation ; but to authorize it would require a statute." A treasurer's deed is a part of statutory proceedings of public officers, a prescribed entry of which is made and kept in books in a public office, and for like cogent reasons that record is sufficient. Since the decision in Seechrist *v.* Baskin, the Acts of 1846, Pamph. L. 124, and 1849, Pamph. L. 344, authorize deeds of sheriffs, treasurers and county commissioners to be recorded in the office of the recorder of deeds in the county where the lands lie; and the records thereof, or duly certified copies, shall be evidence where the original deeds would be. These acts appear to be solely for preservation of the deeds and making exemplifications evidence ; they dispense with no proofs previously necessary to support the deeds. Nor is it their purpose to make the respective records notice of a sheriff's sale, or of a sale for taxes.

The acknowledgment of a treasurer's deed to the county commissioners is before a justice of the peace. The grantees are public officers who make a minute of their purchase and subsequent proceedings respecting the land, which may be redeemed by the owner, and if so the deed shall be given to him. Perhaps in this may be found a reason for dispensing with acknowledgments in open court, but none for bringing the fragment of evidence within the recording act.

By the Act of March 22d 1813, the county of Columbia was erected out of part of Northumberland, with right to the latter to collect all taxes or arrears of taxes laid, or which had become due within the said county of Columbia, as if the act had not been passed. Prior to that date taxes had been assessed on this land, which remained unpaid; it was sold in 1816. The right of Columbia to assess taxes on all lands within its limits, and the obligation of Northumberland to pay the taxes so laid on any land owned by it, are settled by Devor *v.* McClintock, 9 W. & S. 80. It is well said by defendant's counsel that the land had passed into the jurisdiction of Columbia before the sale, and that after the sale Northumberland held it as private individuals hold theirs, subject to payment of taxes, and to loss of its title had one taken and held adverse possession for twenty-one years. They contend that, there-

[Goodman *v.* Sanger.]

fore its title to lands outside its confines are subject to the provisions of the recording act. But as already noted, a treasurer's deed to a private person could not have been recorded under that act, prior to 1846. The land remained unseated, and a purchaser was bound at his peril, to look to the proper records to learn if the title was clear. Who ever heard of one going to the office of the recorder of deeds to examine if there was an outstanding tax title for an unseated tract? As well might he go to the prothonotary's office to ascertain if taxes were in arrears. His place of search is in the commissioners' office, and as he goes back, if he finds the county carved out of another he will not stop short of the latter. The erection of the new county imposed the burden of search in that and in the old, and it could not be otherwise without legislative enactment. Instead of releasing the land from the taxes previously laid it was expressly enacted that they should remain collectible. The direct line of inquiry would lead a purchaser to knowledge that the tract was formerly in Northumberland, subject to taxation there, and by following it he would learn if the land had been sold, to whom, and if redeemed. Were the record incomplete, not clearly showing a sale and outstanding title, a reasonable search leaving it doubtful whether the land had been redeemed and the deed to the commissioner given to the owner, then long lapse of time would advantage the claimant against the tax title. Where the assessment, sale and deed plainly appear in the proper place for inquiry, the purchaser cannot be relieved by mere lapse of time.

We cannot avoid the conclusion that the learned judge erred in holding that the deed " is within the recording law, and that it was the duty of the commissioners of Northumberland county to have recorded the conveyance in the county of Columbia for the purpose of notice." All his rulings, which are assigned for error, were based on that opinion, and there is no occasion for remark upon the several specifications.

Judgment reversed and a *venire facias de novo* awarded.