## Brundred, Appellant, *v.* Egbert et al.

[Marked to be reported.]

*Tax sale—Title—Mortgage.*

A mortgage included within the description a smaller tract of land already mortgaged to another party. Default having been made on the first mortgage of the small tract, the sheriff sold the small tract to plaintiff's predecessor in title. After the sale the smaller lot was assessed for taxes, according to the description in the first mortgage, as seated land. Subsequently it was sold for taxes and bought by the county which held it for ten years, and then sold it to plaintiff. The larger tract covered by the second mortgage was assessed as seated land, and was sold for taxes during the time that the title to the smaller lot was in the county. In an action of ejectment to recover possession of the smaller lot, *Held :*

1. That the sale upon the first mortgage divested the lien of the second upon the smaller lot, and passed a good title to the purchaser.

2. That the sale of the larger lot for taxes did not pass title to the smaller lot, although title to the smaller lot was at the time in the county. Diamond Coal Co. v. Fisher, 19 Pa. 267, distinguished.

3. In such case, where the lots were distinct in their ownership, and in the assessment of taxes, each lot was subject to a lien for the taxes assessed against its owner, and liable to sale therefor, and a sale of either for nonpayment of the taxes against it would pass title to the land covered by the lien of the taxes so returned.

Argued Oct. 3, 1893. Appeal, No. 24, Oct. T., 1893, by plaintiff, B. F. Brundred, from judgment of C. P. Venango Co., Aug. T., 1890, No. 5, on verdict for defendants, A. G. Egbert et al. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Ejectment for sixteen and one half acres of land.

The facts appear by the opinion of the Supreme Court.

The court, TAYLOR, P. J., charged in part as follows :

"From about 1869, the 150 acres was regularly assessed upon the seated list through each year until 1880. For the years 1877, 1878 and 1879, the land was assessed to Egbert and Taft, but the taxes were not paid by them. The land was sold by the treasurer, Davidson, to W. W. Dale, and deed acknowledged in 1880. Dale assigned his title to Egbert, one of the defendants, July 21, 1882. This 150 acres the defendants ask you to find from the plots given in evidence, the evi-

dence of Hilands and Hays, and the evidence of Hays, that from the lines upon the ground, it includes the 16.33 acres in dispute. [11]

" [The vital question in your inquiry, in my opinion, is the exact location upon the ground of the 16.33 acres in controversy, and the exact location of the 160 (150) acres of Egbert and Taft, as regards its proximity to the 66 acres.] " [12]

Plaintiff's points were among others as follows :

" 7. There is no evidence sufficient to vest title in Dale or his assignees or grantees to any part of the land in suit, under or by reason of the treasurer's sale to W. W. Dale. *Answer* : We submit this question to the jury." [15]

" 8. There is no evidence that the assessments for 1878 and 1879 in the name of 'Egbert and Taft 150' was an assessment of the land assessed in the name of Marston, J. H., or that it was intended so to be. *Answer* : This is a question for the jury." [16]

Defendants' points were among others as follows :

" 1. Upon the plaintiff's own showing the county of Venango acquired a complete title to the land in controversy by the treasurer's sale and deed of October 25, 1878, subject only to the right of redemption existing in the former owner." Affirmed. [18]

" 4. The time for redemption having expired before the conveyance by the commissioners to Marston, neither the latter nor the plaintiff claiming under him can question the regularity or legality of the assessment and sale in the name of Egbert & Taft." Affirmed. [21]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were, among others, (11, 12, 15, 16, 18, 21,) instructions, quoting them.

*J. H. Osmer*, for appellant.—The court below erred in the charge to the jury in submitting the location upon the ground of the 16 acres.

Plaintiff contended and now insists that the southern line or boundary of the 200 acres conveyed by Hanna to McBride, and by him to Knapp, was and is the southern boundary of the land purchased by plaintiff under the foreclosure of the mortgage from Knapp to Clark and Andrews.

Both the land of plaintiff and defendants was in fact unseated, and the sale by the treasurer upon an assessment as seated was utterly void and conveyed no title: Hathaway v. Elsbree, 54 Pa. 498.

The sale of lands under the 41st section of the act of April 29, 1844, for the sale of seated land, passes title only when the land is in fact seated. Land sold as seated after it has in fact become unseated conveys no title and is absolutely void, and this notwithstanding the land had been placed upon the seated list by the owner: Earley v. Enwer, 102 Pa. 338; Preswick v. McGrew, 107 Pa. 43; Holloway v. Jones, 143 Pa. 564.

A county treasurer's deed for land sold for taxes as unseated land is void, unless it is made to appear that the land therein described was assessed and taxed as unseated: Miller v. McCullough, 104 Pa. 624.

The mortgage under which plaintiff derived title being prior in date and record, judgment and sale, the lien of the mortgage under which defendants claim title was wholly divested so far as it affected the land in controversy, and plaintiff took title absolute as against defendants. As to their title to any other land not included, no question whatever was made. The court therefore erred in submitting to the jury any question as to whether the mortgage under which the defendants claimed included the land in controversy.

The county treasurer in this case had no jurisdiction to sell either to Egbert or plaintiff's grantor J. H. Marston, and as a matter of law the vendee of the treasurer in neither case took any title whatever.

There was no evidence that the land assessed to Egbert and Taft, after the sale of Marston's land to the county, included the land assessed to J. H. Marston, and the court erred in submission of such question to the jury.

*C. A. Myers, C. Heydrick* and *C. I. Heydrick* with him, for appellees.—This case is not distinguishable in principle from Diamond Coal Company v. Fisher, 19 Pa. 267.

If the defendants' position, affirmed by the learned court below, that an assessment and sale by the county of its own land as seated divests its title, whether the land was in fact seated or unseated, then it would be a waste of time to discuss the

other questions raised by the plaintiff. There could be but one question of fact to be submitted to the jury, viz., whether the land assessed in the names Egbert A. G., and Taft, and sold to W. W. Dale, included that part of the land then owned by the county which is the subject of the present controversy.

OPINION BY MR. JUSTICE WILLIAMS, December 30, 1893:

This case presents an interesting question. It is raised on the following facts : In 1859 a patent issued out of the land office to C. Heydrick and J. L. Hanna for a tract of land containing four hundred and forty acres, twenty-seven perches, and an allowance of six per cent. They made an amicable partition by deed allotting the eastern half of the tract to Hanna and the western half to Heydrick. The division line was not actually run, but the deed provided that it should be run parallel to the east line of the tract, and at such a distance therefrom as to make an equal division of the land.

On the 6th of December, 1859, Hanna sold two hundred acres to McBride, described in such manner as to leave the unsold part of his land at the south end. McBride conveyed the same two hundred acres to Knapp. On the 10th of December, 1859, Knapp mortgaged 66¾ acres to Clark and Andrews describing it as within the Heydrick and Hanna tract, and extending across or nearly across the south end of the allotment to Hanna. In point of fact all but 16⅓ acres of the land covered by the mortgage was south of Knapp's south line; and his mortgage was inoperative as to so much of the land it professed to cover. In 1863, proceedings were had on the mortgage resulting in a sale by the sheriff of the mortgaged premises to Gilfillan. In 1864, Gilfillan sold to Marston, whose title is now held by the plaintiff.

In July, 1860, six months after the mortgage to Clark and Andrews was recorded, Knapp made another mortgage payable to McBride, covering his land down to his south line. This was, as to the land now in controversy, a second mortgage; and the sale upon the first divested the lien of the second, and passed a good title to the purchaser. The second mortgage therefore cuts no figure in this case.

The situation on the ground is shown by the diagram on the next page : The external lines show the Hanna tract. The

south line of the two hundred acres sold to McBride and by him to Knapp is represented approximately by the line *a—b*.   The dotted lines indicate the land covered by the mortgage to Clark and Andrews.   The strip north of the line *a—b* and within the

dotted lines is the strip covered by both mortgages and now in controversy.   The effect of the sale to Gilfillan was to sever the sixteen and one third acres from balance of the two hundred acres, and to take it out from under the second mortgage.   The lot was assessed for taxes, according to the description in the mortgage and the sheriff's deed, as containing sixty-six acres, and the taxes were regularly paid until 1874.   For the non-payment of the taxes of that year the land was sold by the treasurer, upon the seated list, and bought by the county.   The county held it till 1884, charging up the taxes yearly against it, and in that year sold it to Marston.   The plaintiff holds the title of the sheriff's vendee, and the title acquired by Marston from the county.   Upon these facts it is evident that the plaintiff's title is good against Knapp, or any one deriving title from him subsequently to the recording of the mortgage to Clark

and Andrews. The defendants' title is derived from Knapp by virtue of the second mortgage, and covers all the land described in that mortgage except the lot in controversy. That, it does not cover because of the sale to Gilfillan under the prior mortgage, which severed this lot from the other land covered by the mortgage to McBride and completely divested its lien.

But the defendants claim to have acquired the title to the land in controversy by virtue of a tax sale, and this remains to be considered. The defendants' tract was assessed as containing one hundred and fifty acres, and as seated land. The taxes for 1877, 1878 and 1879 were unpaid, and the land was sold by the treasurer in 1880 to W. W. Dale, who, in 1882,. assigned his title to Egbert, one of the former owners, against whom the taxes had been assessed, and one of the defendants in this case. It is now contended that, as the title to the Marston lot was in the county when the sale to Dale was made, that sale conveyed both the lot returned and the Marston lot to the purchaser. As authority for this conclusion the Diamond Coal Company v. Fisher, 19 Pa. 267, is cited.

In that case however it was the same tract, which was sold by the same description at both sales. The first sale was to the county commissioners for a tract of land in Hazel township, formerly Sugar Loaf, in the warrantee name of John Kunkle, containing four hundred and ten acres. Four years later the same tract was sold by the same description, at treasurer's sale, for taxes assessed subsequently to the first sale. The point decided is stated in the syllabus to be that, as the land had not been redeemed from the first sale when the second was made, the title of the county vested in the purchaser "if it were the same land that was sold at the two sales."

In this case we have two lots returned, actually owned by different persons, and having nothing in common so far as the returns would indicate. One was described as containing 66 acres, and assessed as seated, against Marston, owner. The other described as containing 150 acres, seated land, assessed against Egbert and others as owners. Both lots were on the ground. Each was bound for the taxes assessed against it, and liable to sale for its own proper charge, only. The true question for the jury therefore was not whether the description in the mortgage given by Knapp to McBride would inclose the

Marston tract, but whether, at the time the taxes for which it was sold were assessed, the Egbert lot did actually include the Marston. If it did, then the taxes assessed against Egbert and others were a lien on the sixteen acres, and a sale for such taxes would carry a title to all the land covered by such liens. If, however, the lots were distinct in their ownership, and in the assessment of taxes, so that each lot was subject to a lien for the taxes assessed against its owner, and liable to sale therefor, then a sale of either for nonpayment of the taxes against it would pass a title to the land covered by the lien of the taxes so returned. Taxes upon unseated lands are a charge upon the lands in the first instance. Taxes upon seated lands are, in the first instance, chargeable against the owner, and may be collected out of his goods and chattels. If payment is not obtained from the owner the taxes are returned as unpaid, and charged against the property on which they were assessed. They become a lien, and bind the land against which they are returned, and a sale of the land so bound passes title to the vendee in precisely the same manner that a sale in foreclosure of any other lien does. The inquiry in this case is therefore what land was in fact assessed to Egbert et al. When this is ascertained, we know upon what land the lien of the taxes rested after they were returned as unpaid by the collector, and what land passed to the treasurer's vendee by virtue of the tax sale. This inquiry is not difficult. The Marston lot has been separately assessed to its several owners since the sheriff's sale to Gilfillan in 1864. During the same time the Egbert lot has been separately assessed to its owners. The lots were valued by the same assessor. They have been distinct from each other in ownership and assessment of taxes during all this time, and the sale of either for unpaid taxes can have, upon these facts, no power to affect the title to the other. Dale bought therefore at the tax sale the land upon which the taxes against Egbert and his co-workers were charged, viz.: the land owned or occupied by them when the assessment was made. They did not own or occupy the Marston lot, and it was not assessed to them. The taxes due from them did not therefore become a lien upon it when the collector returned them as unpaid, nor did the treasurer's sale divest the title of the real owner. We must sustain the eleventh, twelfth, fifteenth, sixteenth, eighteenth

and twenty-first assignments of error. This is conclusive of this litigation and renders the discussion of the other questions involved unnecessary.

The defendant exhibited no title whatever and the jury should have been instructed to find for the plaintiff.

The judgment is now reversed and a venire facias de novo awarded.