| 189 | 113 |
|---|---|
| 30 SC | ²134 |
| 189 | 113 |
| 32 SC | ²387 |
| f 33 SC | ²275 |

# Sarah Doyle, Devisee of John J. Doyle, *v.* Benjamin F. Brundred, Appellant.

*Partition—Equity—Act of July* 7, 1885.

The Act of July 7, 1885, P. L, 257, which enacts " that the severa. courts of common pleas of this commonwealth shall each have all the power and jurisdiction of a court of equity in all cases of dower and partition within their respective counties," confers no new powers on the courts in proceedings in partition, but only provides a new court for the exercise of powers already possessed.

*Deed—Warranty—Breach of covenant—Damages.*

The measure of damages in this state on a broken covenant for title where there has been no fraud is the proportion of purchase money lost by failure of title, with interest thereon from the date of the deed.

Neither a court of equity nor a court of law has jurisdiction to make whole a party damaged by a broken covenant of title for a certain quantity of land, by taking from the party in default an equal quantity of other land and bestowing it upon the party injured.

On a bill in equity for partition the plaintiff who is the owner of an undivided one half interest in the land under a deed containing a general warranty cannot make the defendant answerable for a deficiency in acreage because he took from the plaintiff's grantor a deed for another undivided interest in the land, with knowledge of the deficiency of acreage in the plaintiff's deed.

Argued Oct. 28, 1898.    Appeal, No. 202, Oct. T., 1898, by defendant, from decree of C. P. Venango Co., Aug. T., 1896, No.    , on bill in equity. Before McCollum, Mitchell, Dean and Fell, JJ.    Reversed.

Bill in equity for partition of land in Cornplanter township. Before Criswell, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree dismissing exceptions to master's report.

*J. H. Osmer*, with him *A. R. Osmer* and *N. F. Osmer*, for appellant.—A recital in a deed is evidence of notice to the purchaser of the fact recited: Burkhart v. Bucher, 2 Binney, 455 ; Bigelow on Estoppel, 324 ; Penrose v. Griffith, 4 Binn. 231.

Where a sale is consummated by payment of the considera-tion and delivery of the deed there can be no recovery for defi-ciency without proof of fraud or mutual mistake. Deficiency, if it be great, though evidence of fraud, is not in itself suffi-cient: Kreiter v. Bomberger, 82 Pa. 59.

It is boundaries to which the grantee must look. He is en-titled to all the land within them. There is no implied cove-nant that the quantity of the land conveyed shall equal the quantity mentioned in the deed : Large v. Penn, 6 S. & R. 488.

The warranty relates to title, not to quantity. The sale to Doyle was for a gross sum. The sale was consummated. It is doubtful, to say the least, whether Doyle, after the consumma-tion of the purchase by the payment of the purchase money and acceptance of the deed, could have maintained an action against Egbert on account of any deficiency in quantity: 4 Kent's Com. *472; Smith v. Evans, 6 Binn. 102; Kreiter v. Bomberger, 82 Pa. 59; Gratz v. Ewalt, 2 Binn. 95; Seitzinger v. Weaver, 1 Rawle, 377; Ake v. Mason, 101 Pa. 17; Knepper v. Kurtz, 58 Pa. 480.

The plaintiff may maintain this suit against this defendant for partition of the land they own in common, but that is the extent of his remedy against him.

The measure of damages for breach of covenant of warranty is, when recoverable at all, compensation by a recovery from the grantor or his heirs : Dumars v. Miller, 34 Pa. 319 ; 4 Kent's Commentaries, *475; Morris v. Phelps, 5 Johns. 49; Guthrie v. Pugsley, 12 Johns. 126 ; Bender v. Fromberger, 4 Dall. 436; Brown v. Dickerson, 12 Pa. 372; McClure v. Gamble, 27 Pa. 288; Gibert v. Peteler, 38 Barb. 497; McClowry v. Croghan, 7 Grant, 307.

The writ of warrantia chartæ in its original form has never been known in the United States : Funk v. Voneida, 11 S. & R. 109; Bender v. Fromberger, 4 Dall. 441; 4 Kent's Com. *470.

*Carl I. Heydrick,* with him *C. Heydrick,* for appellee.—Equity has jurisdiction to grant the relief prayed for in this case: Dan-iell's Chancery Pleading and Practice, *1150 ; Story's Eq. Jur. sec. 651; Reeves v. Reeves, 11 Heisk. (Tenn.) 669; Borah v. Archers, 7 Dana (Ky.), 176; Hitchcock v. Skinner, 1 Hoff-man's Ch. 21; Sneed v. Atherton, 6 Dana, 276 ; Respass v.

Breckenridge, 2 A. K. Marshall (Ky.), 581; Hall v. Piddock, 21 N. J. Eq. 314; Kelsey's App., 113 Pa. 119; Polhemus v. Emson, 30 N. J. Eq. 405; Backler v. Farrow, 2 Hill Eq. (S. C.) 111; Armstrong v. Walker, 150 Pa. 585; Yohe v. Barnet, 1 Binn. 358; Cheyney's App., 148 Pa. 142; Barnes v. Lynch, 151 Mass. 510; Harlan v. Langham, 69 Pa. 235.

OPINION BY MR. JUSTICE DEAN, January 2, 1899:

This is a bill for partition of certain lands in Cornplanter township, Venango county. It appears from the evidence, that on October 27, 1859, a tract containing 440 acres, and allowance was patented to C. Heydrick and J. L. Hanna, who by exchange of conveyances, divided the land equally, so that Heydrick took title to the western half and Hanna to the eastern, in severalty the dividing line running north and south. Hanna, then by deed of December 6, 1859, conveyed 200 acres of his half to Nathaniel McBride by metes and bounds; the part so conveyed, was the north of the tract, and was $197\frac{6}{10}$ rods long from north to south, and 162 rods wide from east to west. McBride then conveyed the same lands to Benjamin R. Knapp, who then executed three several mortgages upon it. The first dated December 10, 1859, was to Clark and Andrews. It described a tract of land, beginning at a point on the east line of the whole tract, 180 rods south from the northeast corner thereof; thence west by a line parallel with the north line of the whole tract, 132 rods; thence south by a line parallel with the east line of the tract, eighty-one rods; thence east by a line parallel with the north line, 132 rods to the east line of the whole tract, thence north eighty-one rods to the place of beginning. The second mortgage was to Nathaniel McBride, dated December 20, 1859, and purported to describe by metes and bounds the 200 acre tract. The third mortgage also to McBride described a piece of land beginning at a point on the east line of the whole tract, sixty rods south of the northeast corner, thence by a line parallel with the north line of the whole tract, 132 rods, thence south by line parallel with the east line, 180 rods; thence by line parallel with the north line to the east line, 132 rods, and thence to place of beginning, containing 150 acres.

As to the first mortgage to Clark and Andrews, it is manifest there was misdescription either by mistake or design; for

if Knapp got by his deed a tract of land 197 rods long from north to south, and 132 rods wide, and then placed the beginning of his description in the mortgage, 180 rods south from the northeast corner of the tract, there were but seventeen rods between that point and the southern extremity of the tract, yet the line in the description is eighty-one rods; to measure this distance, the surveyor must run south sixty-four rods over on an adjoining owner. In fact the Clark and Andrews mortgage covered only sixteen and one third acres of the land owned by Knapp, but as this was the first mortgage and duly recorded, as to this much it was undoubtedly the first lien. As to the third mortgage it is necessarily a misdescription also. The whole line was 197 rods; the description in this mortgage commences at a point sixty rods from the end of the line, and extends 180 rods south; there were but 137 rods in length left in that direction, so it must have extended forty-three rods over on an adjoining owner.

Judgment was obtained on the second and third, the two McBride mortgages, levari facias issued thereon, and the land sold at sheriff's sale to E. C. Smith and Horace Hoyt, and deeds duly acknowledged May 3, 1866. Three years before this the mortgage to Clark and Andrews had been sued out, the land sold by the sheriff and deed acknowledged May 1, 1863, to C. W. Gilfillan. This last deed vested in the purchaser whatever land was embraced in the description of the mortgage, and which was owned by Knapp at the date of its execution; this, however, was only sixteen and one third acres of the southern end of the tract. The Clark and Andrews mortgage being a first lien, it is immaterial that the boundaries of the second and third mortgages encroached upon it; a sale upon them could not affect the title of the purchaser to this small part of the land covered by the first mortgage.

We have then a first mortgage to Andrews and Clark of sixteen and one third acres of the southern end of the original tract; then a mortgage to McBride, purporting to be on 200 acres of the original tract which was a second mortgage on the sixteen and one third acres, and a first mortgage on what was left within the boundaries outside the northern line of the sixteen and one third acre tract; then a mortgage to McBride by metes and bounds purporting to be of 150 acres, which cov-

ered the whole of the sixteen and one third acres, and was a third mortgage on that much of the original tract, and a second mortgage on about 100 acres of the original tract immediately adjoining it on the north.

As before noticed, sale was made on the Clark and Andrews mortgage, May 1, 1863, to Gilfillan; this operated as a complete severance of the sixteen and one third piece from the balance of the tract; thereafter Gilfillan and those claiming under him, held by a title as independent of and as disconnected from the original grant from Hanna to McBride as any other adjoining owner. Gilfillan afterwards conveyed this small part to one J. H. Marston, which deed, before record thereof, was lost, and after a sale by Marston to Benjamin F. Brundred, Gilfillan made another conveyance direct to Brundred; thereafter the small tract became known as the " Marston " tract.

As noticed the land described in the second and third mortgages was sold to Smith and Hoyt. On January 12, 1864, Hoyt conveyed to A. C. Egbert an undivided half part of 150 acres, by precisely the same description as that in the third mortgage to McBride; Smith had previously conveyed to Hoyt an undivided one half of his half in the same land, and the title then stood in the three as tenants in common, Egbert the owner of the undivided half, and Smith and Hoyt each the owner of an undivided one fourth. Hoyt by deed of February 4, 1869, conveyed his interest to C. E. Taft. On March 6, 1888, Egbert conveyed his interest by deed of general warranty to one J. J. Doyle the devisor of this plaintiff, by the same description as in the conveyance from Hoyt to him. Then Egbert entered upon the " Marston " tract claiming title under the sale on the second and third mortgages, and drilled an oil well; Brundred brought ejectment and obtained two judgments in his favor; see Brundred v. Egbert et al., 158 Pa. 552, and same against same, 164 Pa. 615. Thus not only was Brundred's title to the whole of the " Marston " tract clear by the deeds but that title was rendered indisputable by the judgments in his favor.

Taft, one of the tenants in common under the sales made on the second and third mortgages, having died, his estate descended to his heir at law, W. S. Taft, who on January 9, 1893, conveyed it to Egbert, who conveyed to Brundred, thus giving

him a fourth in the land outside the "Marston" tract; he also through one David LeRoy, who had become the owner, obtained title to another fourth thus constituting him the owner of an undivided one half of the land which passed by the sale on the second and third mortgages.

This bill is for a partition of this land in which plaintiff and defendant are tenants in common, each owning the undivided one half. The deed of Egbert to the plaintiff for the one half follows the description in the mortgage, and consequently overlaps the "Marston" tract; it contains a clause of general warranty, and is dated March 6, 1888. It was after the delivery of this deed, that defendant purchased and took a conveyance of the "Marston" tract, and the two undivided one fourth interests in the supposed 150 acre tract adjoining it on the north. But by reason of the misdescription in the mortgages, perpetuated in the subsequent conveyances, the quantity instead of 150 acres, is only 100 acres. The learned judge of the court below under the authority conferred by the act of 1885 giving courts equitable jurisdiction in cases of partition undertook to administer the equities growing out of the circumstances attending the conveyances. The deed of Egbert to plaintiff, is for the undivided half of 150 acres by courses and distances, and defendant knew the title was worthless, so far as it included any part of the "Marston" tract, at the time he accepted his conveyance from Egbert; and therefore knew there was a breach of the warranty as to quantity, if there was such breach. If the title to any fraction of the tract had remained in Egbert, and as against him partition had been sought by plaintiff, it was argued, equity would have decreed to plaintiff her half of 150 acres, even if that had taken from her cotenant and grantor all of what remained. And as defendant purchased with knowledge of the prior grant to plaintiff, he is subject to all the equities that could have been enforced against his grantor. On this theory the court below made partition. As the defendant took one fourth from LeRoy, who was not a party to the Egbert grant to plaintiff, he directed that partition should be made by assigning to defendant the equivalent in value of the one fourth; then to plaintiff the equivalent in value, if practicable, the half of 150 acres, then if anything remained to defendant by reason of his purchase from Egbert of

one fourth.   A master was appointed to make partition accordingly.   He found on going upon the land, that it was equally valuable, acre for acre, and that the quantity north of and adjoining the Marston tract was 100 acres ; therefore he set apart to Sarah Doyle, plaintiff, by metes and bounds, seventy-five acres and to Brundred twenty-five acres, thus excluding him from any share of the land under his conveyance from Egbert of the one fourth, and giving to Sarah Doyle out of the 100 acres the same quantity she would have been entitled to if the tract had contained 150 acres.

From this decree, defendant appeals, assigning for error the inequality of the partition, and a denial of the jurisdiction of equity to determine a breach of warranty in a former grantor of defendant and to compensate plaintiff in damages by awarding to her a part of his land.

The act of July 7, 1885, enacts : " That the several courts of common pleas of this commonwealth shall each have all the power and jurisdiction of a court of equity, in all cases of dower and partition within their respective counties."   We think it clear, this act conferred no new powers on the courts in proceedings in partition ; theretofore equity was enforced or attempted in actions in partition in the common pleas but the proceedings were cumbersome and often inadequate in reaching an equitable partition ; that by bill, is much more convenient and effective.   The act only provided a new court for the exercise of powers already possessed.

Whether under the description in this deed to Doyle, by reason of the deficiency in quantity of twenty-five acres out of seventy-five, there was a breach of Egbert's warranty, is a question which may arise in the future, and therefore we express no opinion upon it.   No fraud upon the part of Egbert is alleged ; it is altogether probable he ignorantly followed Knapp's description in the third mortgage.   Assuming this to be the fact, he was answerable in damages only for the proportion of purchase money lost by failure of title, with interest thereon from date of his deed, for it will be noticed the master has found as a fact, that the whole tract was of equal value, acre for acre.   From the case of Bender v. Fromberger, 4 Dall. 442, a well-considered case decided in 1806, this has been the measure of damages in this state on a broken covenant for title where there was no

fraud. Brown v. Dickerson, 12 Pa. 372, and Dumars v. Miller, 34 Pa. 319, are to the same effect.   In the last case cited, it is said: "In feudal times, land was esteemed more highly than money for reasons growing out of the feudal institutions and the anti commercial tendencies of the age.   Hence the recovery for a breach of the covenant was in other lands."   But this long obsolete rule which began to give way even in Coke's time is the one practically adopted by the court below; twenty-five acres of Brundred's land is taken from him and given to plaintiff as damages for Egbert's breach of warranty in that quantity; and this, eight years after the breach; for as Egbert owned no part of the Marston tract, the covenant if broken at all, was broken as soon as made.   Whether the land had appreciated by the development of oil in the mean time and Brundred's land was worth per acre the price paid for two at the date of the warranty, is not determined.   And the consideration named in the deed, is only prima facie evidence of the price paid; the covenantor may prove that the actual consideration was less: Byrnes v. Rich, 5 Gray, 515.   We are of the opinion that neither a court of equity nor a court of law has jurisdiction to make whole a party damaged by a broken covenant of title, by taking from the party in default an equal quantity of other land and bestowing it upon the party injured.

But assuming that if Egbert were still the owner of the other half and a party to the partition, that damages could be assessed against him on his broken covenant in this proceeding, how can Brundred, his grantee of another portion of the land, be made answerable on the first grantee's contract, to which he was not a party?   Assume, that the covenant of Egbert to Doyle was an incident of that grant, it was not an incident to Brundred's; that the latter must have known of the existence of a deficiency in Doyle's grant, when he purchased from Egbert, in no sense made him a party to the Doyle grant; such knowledge was not a guilty knowledge; besides he had before his eyes, on the record, the fact that Doyle had exacted a covenant from Egbert to protect him against loss.   To hold that Brundred could be even assessed with damages to make good a default of Egbert merely because he knew Doyle could not get under his deed more than the undivided half of 100 acres, instead of 150, would be reaching out much further to find and administer an equity,

than the most liberal construction of the act of 1885 would warrant. If Brundred be answerable to Doyle it is because of his contract with Egbert, and because Egbert is answerable to him; yet Egbert is no party to this bill, and Brundred would have a final decree against him, before he could call upon Egbert for restitution; then for the first time, Egbert would be heard; what answer he might make to the alleged equities of Doyle, the court cannot tell; such answer might be sufficient to prevent any decree for damages in favor of plaintiff. We think the court fell into error: (1) in appropriating Brundred's land to make good the damages sustained by alleged breach of Egbert's warranty; and (2) in assuming jurisdiction in equity to determine a liability of Egbert who was not a party and imposing answerability therefor on Brundred who was no party to Egbert's contract with Doyle.

The decree of the court below is therefore reversed and the record is remitted that the master may make partition of the 100 acre tract between plaintiff and defendant as the owners each of the undivided half thereof. Costs of this appeal to be equally paid by the parties.