The City of Philadelphia, Trustee under the Will of Stephen Girard, deceased, Appellant, *v.* George Raup and Elias Steetzler.

*Tax sale—Redemption—Payment of taxes.*

Where a county buys in lands at a tax sale and holds them for over five years, the title of the county becomes absolute, and it cannot be divested by the mere nonpayment of taxes on the lands by the county and the payment of the taxes by another.

Argued April 13, 1896. Appeal, No. 48, July T., 1895, by plaintiff, from judgment of C. P. Columbia Co., Feb. T., 1885, No. 25, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ. Affirmed.

Ejectment for a tract of land. Before METZGER, P. J., of the 29th judicial district, specially presiding.

The facts appear by the report of Goodman v. Sanger, 85 Pa. 37; s. c., 91 Pa. 71, and by the charge of the court, which was as follows:

This is an action of ejectment, brought by the city of Philadelphia, trustee, against George Raup and Elias Steetzler, to recover the possession of a tract of land now situate in Conyngham township, Columbia county, containing four hundred acres and allowance, surveyed in the warrantee name of Johnston

Besely. This tract of land was formerly located in Northumberland county, and remained within that county until the passage of the act of assembly in 1813, carving out of Northumberland county the county of Columbia. This tract of land was surveyed March 7, 1794, in pursuance of a warrant that had previously (January 10 of that year) been issued by the commonwealth of Pennsylvania to Johnston Besely. This survey was duly returned (September 29, 1794) to the land office, and a patent was afterwards issued to one, Robert Morris—we think in the same year; we will not be exact about that, but think it was the same year, probably the fall of 1794; dated October 16, 1794. The patent was issued to Robert Morris in consequence of his having become the purchaser of this tract of land, conveyed to him by deed dated May 20, 1794. We thus have the title out of the commonwealth of Pennsylvania, and in Robert Morris.

The plaintiff in this case, the city of Philadelphia, proceeded in her evidence produced before you to trace her title through Robert Morris, the patentee, down until it became vested in herself as trustee (under an act of assembly) for the residue of the Girard Estate. If there were nothing more in the cause, the plaintiff would be entitled to recover possession of the lands described in her writ.

On the part of the defendants, however, it is contended that the plaintiff or those under whom the plaintiff claims lost the legal title in 1816 by virtue of a treasurer's sale which was then made in Northumberland county for the payment of the taxes claimed to be then due and unpaid to the county of Northumberland from the year 1805 to the year 1813 inclusive. We are not clear whether the testimony shows that the taxes for all those years or that all the taxes for those years were due and unpaid at the date of that treasurer's sale, but that is not material. As soon as the taxes for at least one year, excluding the year of the sale, were due, the treasurer of the county had a right to make sale of the land for the payment of the taxes; and it is clearly in evidence that these taxes on the tract in dispute were not paid for several of the years preceding the sale. This treasurer's sale of this particular tract was made on the 15th day of June, 1816; and if that sale is good, then the title passed by it and became vested in the purchaser at that sale,

398 PHILADELPHIA, Appellant, *v.* RAUP et al.

Charge of Court.                    [177 Pa.

and still remains in the purchaser, or in those to whom he has conveyed his title, or who now hold the land under him in the chain of title from him, unless there has been a redemption from that sale or unless something else has occurred to wrest the title from the purchaser at that sale. This treasurer's sale appears to have been regularly made and for taxes undoubtedly due and unpaid; on that part of the subject there is no conflict in the testimony. At this sale the county of Northumberland through its commissioners became the purchaser. Evidently no bid exceeding the taxes and costs was offered, and the act of assembly requires that the commissioners of the county shall in such case bid in the lands for the county. The title remained in the county of Northumberland from that date (June 15, 1816) until some time in the year 1874; but, in the meantime, in the year 1838 this same land had been again sold for taxes accrued upon it while lying in Columbia county, which taxes were due and unpaid. From this sale of 1838 there was a redemption in 1840 (within the limit of two years from the date of the sale, as provided by act of assembly, within which limit the owner may redeem) by the treasurer of Northumberland county, and thus the title of that county remained intact. In 1874 the commissioners of that county, not having received the purchase money and the taxes which had subsequently accrued, made sale of this property, as they had a right under the act of assembly to do at any time after five years from the date of their purchase, within which period redemption might be made. If the land is not redeemed within five years from the date of the sale to them, they may sell it again, and then the absolute title passes to the purchaser. The land was not redeemed within the five years, and the commissioners did make such sale, and at that sale the land was purchased by some one whose name we do not remember, nor is his name important. It is in evidence that the purchaser reconveyed the same land; and divers conveyances have been put in evidence here showing that the title of that purchaser finally became vested in the defendants to this action, or rather in their landlord, they being tenants of the Johnston Besely Coal Company, the present owner of the land.

On the part of the plaintiff, the city of Philadelphia, trustee, it is contended that there was an abandonment of the title pro-

cured by purchase at that treasurer's sale, and also that there was a redemption from that sale. She, the city, does not, however, pretend that she has proved an actual redemption from this sale; but she says that she has proved that for more than a half century she (or those under whom she claims) has paid the taxes upon these premises, and that the county of Northumberland did not pay any attention to them nor pay any taxes upon them, and she claims that this act of payment of taxes upon her part or on the part of her predecessors in title, and this neglect to pay on the part of the defendants, or of those under whom they assert title, lost to the defendants or to their landlord (if they ever had it) this treasurer's tax sale title.

It is true that there is some difference in the case, as it is presented before us, and the case as it was tried a few years ago before Judge Elwell; but the only difference that the court can perceive, is that in the case before Elwell there was an attack made upon the plaintiff's title, and that the plaintiff then did not really have a legal title. In this case, however, we must say to you that the plaintiff or her grantors did have the legal title (so far as the evidence produced here shows) up until it was divested by the treasurer's sale in 1816, and that, of course, during that period, from the time of the issuance of the patent to Robert Morris up to the time of this sale, the plaintiff's grantors, having the legal title had also the constructive possession of this tract of land—not the actual possession, the land being unseated and not in a condition to be occupied by any one. In such case, the legal title draws to itself the possession, called constructive possession, and that possession belonged to the holders of the plaintiff's title down to the time of this treasurer's sale; [but after the title of the plaintiff was divested by that treasurer's sale, in 1816, then the county of Northumberland became the legal owner, and the sale to it not having been redeemed from within the five years allowed by law, it follows that in the year 1821 the county of Northumberland had an absolute vested title to this land. It was the complete legal title; there was nothing inchoate or imperfect any more about it. From that time on, we charge you, as the law applicable to this case, that the county of Northumberland had the title and the constructive possession of this property, and that the mere fact of failure or neglect on her part to pay the taxes assessed

thereon is not sufficient to deprive the county of her title or to defeat its assertion here to-day by these defendants, in whose landlord that title now vests.] [7]

Until lately, neither party was in the actual possession of this disputed tract, because formerly the land was unseated; and therefore the fact that the one party or the other was out of the actual possession is no evidence either for or against. We have never yet seen a case where claim of title could be sustained against the legal owner of unseated land by merely showing payment of taxes for a series of years. Of course, if actual possession of this land had been taken in the meantime by the plaintiff or by those under whom she claims, then payment of taxes in connection with that possession might have determined the extent of the possession, and also might have been a strong circumstance to show the character of the possession.

As was said by Chief Justice Agnew, in delivering the opinion of the Supreme Court of this state, in the case where this question first arose—Goodman v. Sanger, 85 Pa. 37 :

" The title of the county then being absolute, there was nothing inchoate or imperfect which might be suffered to lapse from laches or inattention. In the case of an absolute title and its constructive possession as a legal incident of unseated land, the non-payment of taxes by the owner creates no abandonment or forfeiture of title. Nothing less than the sale of the land for the unpaid taxes will extinguish his title. Nor will payment of taxes by another give him title without a possession to give effect to the statute or other facts, to create an estoppel," etc.

While the commissioners, of course, had no better nor greater rights than an individual would have who held the absolute title, yet we must not forget that the commissioners change now every three years, and that formerly it was the custom for one to go out every year and a new one to be elected in his place, and that it would be very diffcult for them to keep track of all the lands belonging to the county, and particularly of lands that had been taken from their county and put into the jurisdiction of a new county, carved out of their own.

[On the whole, we do not find in the evidence in this case anything that is inconsistent with the title that is asserted here by the defendants.] [8]   So far as the question here affects them, the only difference we find is the evidence now of the

payment of taxes and of a redemption of the land at different times since the sales were made. The county of Northumberland did itself redeem this land in 1840 from the sale in 1838. The county certainly claimed and asserted title in 1840 by that act of redemption from the sale of 1838. Besides, it appears now that for some years—since the latter part of December, 1871, as alleged by the defendants; and since February 27, 1882, as conceded by the plaintiff—some two years, at least, before suit brought, the Johnston Besely Coal Company, by its tenants, has been in the actual possession and occupancy of this tract. We have no recollection that the plaintiff has shown that she, or any of her grantors, ever took actual possession of this land at any time. Under this state of facts and under our view of the law governing this case we have but one question to submit to you, gentlemen of the jury; for where the evidence is undisputed it is the duty of the court to declare what is the legal result arising upon the facts.

The only material question of fact here about which there could possibly be any dispute is the question of the identity of this land—that is to say, whether the land for which this suit is brought is the same land that was sold at the treasurer's sale in Northumberland county in the year 1816, and purchased by that county through its commissioners. We leave that question to be decided by you, but in doing so we say that we do not think that there is sufficient evidence to warrant you in finding otherwise than that it is the same land, although this instruction is not binding upon you. In the assessment books and other papers in evidence the warrantee-name of this tract is spelled sometimes one way and sometimes another, and there are other little matters of variance; but, if our recollection is right, on all the papers we have the same number of the warrant and the same number of acres, and the number of the warrant for the survey of the land for which this suit is brought is the number of the warrant for the survey of the land that was sold in 1816. And you will remember that the plaintiff here has offered evidence uncontradicted to show that there was no other Johnston Besely tract or Besely warrant, or any warrant, that could come under that name or anything like it, within forty miles of the territory where this land is located. This is a fact which you must take into consideration when you come

to determine whether or not this is the same land. If there is no other warrant of like name within forty miles, then is not the tract for which this suit is brought the same land surveyed under the same warrant as that which was sold at the sale in 1816? Besides, the name all through the papers is substantially the same in sound. If, on little technicalities of that kind—on the misspelling of a name—courts and juries were to permit a sale to be set aside, no man would be safe in buying at any public sale. [Is there such a discrepancy here in the name or in the location or in the evidence anywhere as to cause you to doubt as to the identity of this tract? If there is not, then your verdict must be in favor of the defendants; we so charge you; otherwise, you may find a verdict in favor of the plaintiff.] [9]

We will answer the points that have been submitted by counsel, and then leave the case to you.

Plaintiff's points and answers were among others as follows:

1. If the jury find from the evidence in the case that Stephen Girard (under whom the plaintiff claims) purchased in 1830 the land in controversy (among other lands) and paid therefor $30,100; that the plaintiff and those under whom it claims have paid the taxes which were assessed upon this tract in Columbia county from 1814 to the time of bringing this suit; that the county of Northumberland never paid any taxes, except on June 10, 1840, when said county of Northumberland redeemed from the sale of 1838 by the treasurer of Columbia county (and then only after the plaintiff had previously, on June 4, 1840, redeemed from the said sale), and that the county of Northumberland failed to place its deed upon record or to pay taxes, or to do any other act in claiming or asserting its title up to 1874, when the commissioners sold to one Goodman (a period of fifty-eight years),—the jury may infer: (1) That the plaintiff or those under whom it claims had redeemed the land in question from the sale, on June 15, 1816, by the treasurer to the commissioners of Northumberland county. (2) That by the nonclaim for this long period the jury may infer that the county of Northumberland had been paid the taxes and costs of said sale by the plaintiff or those under whom it claims. (3) That the said county of Northumberland had reconveyed upon payment of said taxes. *Answer:* We answer this point

in the negative; we have already so answered it in our general charge. [10]

2. That the nonclaim of the county of Northumberland for so great a length of time and the payment of taxes and assertion of title by the city of Philadelphia, trustee under the will of Stephen Girard, deceased, and those under whom it claims, are facts from which the jury may infer that the owner of said land had redeemed from the said sale on the 15th of June, 1816. *Answer:* We refuse so to instruct you. A redemption of lands from a tax sale cannot take place, unless the payment is made for the purpose of redeeming; the mere fact of going on and paying taxes is not a redemption. You must go and pay in the redemption money, which includes taxes and costs and twenty-five per cent additional. [11]

4. That, if the jury find from the evidence that the county of Northumberland neglected to pay taxes or to assert its title in any way, and that the city of Philadelphia, as a trustee under the will of Stephen Girard, was thereby bound to pay and did pay the taxes until the bringing of this suit, such neglect bars the county of Northumberland and its vendees and privies from claiming under said purchase as against the plaintiff, and the verdict should be in favor of the plaintiff for the land described in the writ. *Answer:* We cannot so instruct you under the evidence in this case. [12]

5. That, under the evidence in the cause, the verdict of the jury should be in favor of the plaintiff for the land described in the writ. *Answer:* We cannot so instruct you; but we do instruct you that you must find for the defendants the lands described in the writ, unless the lands sued for are not the same lands that were sold at the sheriff's sale in 1816. [13]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were, among others, (7–13) above instructions, quoting them.

*Samuel H. Kaercher* and *F. Carroll Brewster*, for appellant.—The identity of a tract of unseated land sold for taxes is for the jury: Russel v. Werntz, 24 Pa. 337; Woodside v. Wilson, 32 Pa. 52; Miller v. Hale, 26 Pa. 432; City v. Miller, 49 Pa. 440.

The sale of June 15, 1816, under which the appellees claim,

was irregular and void, and no title passed thereby: Act of March 13, 1815, 6 Sm. Laws 299, Purd. 1674, sec. 17.

A sale of unseated land for taxes divests the lien of all taxes assessed for any year prior to that in which the sale is made: Irwin v. Trego, 22 Pa. 368 ; Fager v. Campbell, 5 Watts, 287 ; Huzzard v. Trego, 35 Pa. 9 ; Walker v. Canal Co., 29 Leg. Int. 381 ; Eaton's App., 83 Pa. 154.

Under the facts undisputed as they are the county must be presumed to have abandoned any title she may have had, and she is estopped from maintaining otherwise: Biddle v. Bank, 109 Pa. 349 ; Hook v. Hook, 38 Leg. Int. 216 ; Carter v. Fishing Co., 77 Pa. 310 ; Goodman v. Sanger, 85 Pa. 37.

*S. P. Wolverton* and *George F. Baer*, for appellees.—On the trial of this case before Judge ELWELL every objection was made to the regularity of the assessments and the sale to the commissioners in 1816, and the sale of the commissioners of Northumberland county to John H. Goodman in 1874: Goodman v. Sanger, 85 Pa. 37.

Nonpayment of taxes by the owner and payment of them by an intruder in possession may be evidence of an admitted ouster to the extent of the boundaries of the tract and thus to extend the pedis possessio to the woodland ; but payment of taxes alone will not confer title where none exist : Naglee v. Albright, 4 Whart. 300 ; Sorber v. Willing, 10 Watts, 141 ; Sailor v. Hertzogg, 10 Pa. 316 ; Mayor of Phila. v. Riddle, 25 Pa. 263 ; Kelsey v. Murray, 9 Watts, 111 ; Goodman v. Sanger, 91 Pa. 71.

The doctrine of abandonment does not apply to a perfect title, but only to imperfect titles : Bear Valley Coal Co. v. Dewart, 95 Pa. 78.

OPINION BY MR. CHIEF JUSTICE STERRETT, October 5, 1896 :

This is the fourth time that questions involving the title in controversy have been presented to and passed upon by this court. In Goodman v. Sanger, 85 Pa. 37 ; Same v. Same, 91 Pa. 71 ; and Sanger v. Goodman (not reported), substantially the same questions, that are now presented, were considered and disposed of. The last was a writ of error to the judgment for plaintiff below on the verdict directed by the learned trial

judge.   After referring to the fact that the case had been here twice before, the court, in unanimously affirming the judgment, said that every material question had already been passed upon; that Robinson et al. v. Williams et al., 6 Watts, 281; and Devor v. McClintock, 9 W. & S. 80, ruled the controversy, etc.   As will be seen by reference to the cases referred to and authorities therein cited, all the material questions presented in the record now before us have already been ruled adversely to the contention of the present plaintiff.   The question as to the discharge of the Northumberland county taxes, by the alleged sale for taxes due Columbia county, was raised and decided when the title now in controversy was before this court the third time. As shown by that record, the offers of evidence are substantially the same as those in the record now before us.   As to the questions of abandonment, estoppel, redemption, etc., the language of Mr. Chief Justice AGNEW in Goodman v. Sanger, 85 Pa. supra, is equally applicable to the evidence in this case. We find nothing in the record that would justify us in sustaining either of the assignments of error; nor do we think that further discussion of the questions presented by either of them is necessary.

Judgment affirmed.