# Gamble v. Central Pennsylvania Lumber Company, Appellant.

*Tax sale—Sale by county commissioners—Assessments—Land law.*

1. A sale of unseated lands by the county commissioners for nonpayment of taxes is valid, although the township assessor has made no return of assessment of such lands. The county commissioners as a board of revision are themselves competent to assess the tax.

2. Where a person in good faith purchases a tract of land from county commissioners which the commissioners had bought in at a tax sale, and there is nothing of record to show that the commissioners had ever done anything to impair or abandon their title, the former owners of the land cannot allege as against such purchaser that the commissioners had continued to collect taxes from the land after the sale, thereby abandoning their title.

3. Where an assessor returns an assessment on a tract of unseated land in his own township, the county commissioners have a right to levy a tax on such land and collect it, although the return may have improperly located the land. The commissioners are not called upon to satisfy themselves as to the accuracy of the return.

4. Where taxes are paid on a portion of an unseated tract of land, and the remainder is sold for nonpayment of taxes, and the county commissioners buy it in at the sale, and thereafter sell it to another person, the purchaser of the tax title, if there has been no previous apportionment of the land, has the right to locate his purchase upon such part of the whole tract as he may choose.

'Argued March 17, 1908. Appeal, No. 345, Jan. T., 1907, by defendants, from judgment of C. P. Lycoming Co., June T., 1905, No. 450, on verdict for plaintiffs in case of Jefferson A. Gamble and W. H. Green v. Central Pennsylvania Lumber Company and the Elk Tanning Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Ejectment for land in Lewis township. Before HART, P. J. The facts are stated in the opinion of the Supreme Court.

Defendants presented the following points.

1. That under the pleadings and evidence the verdict must be for the defendants. *Answer:* This point is refused, and I will leave this whole matter as a question of fact to be determined by the jury. [11]

2. It being the undisputed evidence in this case that the James Strawbridge warrant, No. 5,666, 1,100 acres, was assessed in Lewis and Cogan House townships for the years 1896 to 1902, both inclusive, with taxes, by the county commissioners of Lycoming county, and that said taxes were collected by the county of Lycoming from the Elk Tanning Company for the said years, that such assessment, collection and receipt of taxes by the county of Lycoming amounted to an abandonment by the county of its title, acquired by the treasurer's sale of 1894, and the purchaser from the county in 1902 acquired no title to the premises in dispute. *Answer:* This point is refused. [10]

3. That no such evidence has been offered by the plaintiffs in explanation of the mutilation appearing in the alleged tax assessment to warrant the submission of the same to the jury as evidence of an assessment; neither is there sufficient evidence of the identity of the tract which was the subject of the alleged tax sale, to show whether it was warrant No. 5,665 or warrant No. 5,666. *Answer:* This point is refused. [4]

4. That there is no sufficient evidence of a legal assessment of warrant No. 5,666 in the name of James Strawbridge for the year 1893, and the alleged tax sale is, therefore, void. *Answer:* This point is refused. [5]

5. That there is no sufficient evidence of a valid assessment

corresponding to and sustaining the alleged tax sale of 400 acres as part of the James Strawbridge warrant No. 5,666, and, therefore, the sale is void. *Answer:* This is refused. [6]

6. That there is no proof of identity of the land covered by the alleged sale with the 400 acres claimed by the plaintiffs in this action. *Answer:* Refused. [7]

7. That under the testimony in the case the plaintiffs were not entitled to arbitrarily select the location which they have fixed by their map offered in evidence. *Answer:* Refused. [9]

10. That the legal effect of the evidence in relation to the payment of the taxes for the year 1893 upon tract No. 5,666 was to discharge said tract from further liability and left no power in the treasurer to make sale of the tract or any portion thereof. *Answer:* Refused. [8]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were (4–11) above instructions, quoting them.

*Thomas H. Murray* and *Seth T. McCormick*, with them *C. H. McCauley*, for appellants.—There was no asssessment of warrant No. 5,666 for the year 1893: Laid v. Heister, 24 Pa. 452; Bratton v. Mitchell, 7 W. & L. 259; Wells v. Smyth, 55 Pa. 159; Lyman v. Philadelphia, 56 Pa. 488; McReynolds v. Longenberger, 57 Pa. 13; Greenough v. Coal Co., 74 Pa. 486.

There was no proof of the identity of the tract 5,666 as covered by the alleged assessment: Robinson v. Myers, 67 Pa. 9; Burgwin v. Bishop, 91 Pa. 336; Churchman v. Smith, 6 Wharton, 145; Jordan v. Stewart, 23 Pa. 244; Fisk v. Corey, 141 Pa. 334; McClement's App., 2 Pa. Superior Ct. 443; Hess v. Herrington, 73 Pa. 438; Marsh v. Nelson, 101 Pa. 51; Reading v. Finney, 73 Pa. 467; Breisch v. Coxe, 81 Pa. 336; Brown v. Hays, 66 Pa. 229.

The county commissioners abandoned their title under which plaintiffs claim, and the plaintiffs are now estopped from asserting it: Hunter v. Albright, 5 W. & S. 423; Diamond Coal Co. v. Fisher, 19 Pa. 267; Cobb v. Barclay, 9 Pa. Superior

Ct. 573; Schreiber v. Moynihan, 197 Pa. 578; Feltz v. Coal Co., 203 Pa. 166; Murphy v. Packer, 152 U. S. 389.

Plaintiffs' location of 424 acres in question is unwarranted and without authority in law: Brotherton v. Livingston, 3 W. & S. 334; McCord v. Bergautz, 7 Watts, 487; Hess v. Harrington, 73 Pa. 438; Stewart v. Shoenfelt, 13 S. & R. 360; Diamond Coal Co. v. Fisher, 19 Pa. 267; Breisch v. Coxe, 81 Pa. 336.

Even if under the circumstances there was a right of election, this right had been exhausted by a prior and different location.

*N. M. Edwards* and *C. La Rue Munson,* of *Candor & Munson,* with them *H. W. Whitehead* and *A. G. Miller,* for appellees.— There was a legal assessment of warrant No. 5666 upon which the county treasurer's sale is based in this case: Hess v. Herrington, 73 Pa. 438.

The county commissioners were the officers competent to assess the tax. That no valuation was made or returned, was a mere irregularity: Hubley v. Keyser, 2 P. & W. 496; Reynolds v. Longenberger 75 Pa. 13.

The identity of the tract as well as apparent mutilation of the record were all questions for the jury and all of which have been decided by the jury in favor of the plaintiffs in this case: Schreiber v. Moynihan, 197 Pa. 578; Marsh v. Nelson, 12 W. N. C. 214; Woodside v. Wilson, 32 Pa. 52; Diamond Coal Co. v. Fisher, 19 Pa. 273; McReynolds v. Longenberger, 75 Pa. 13.

The county commissioners did not abandon their title under which plaintiffs claim: Philadelphia v. Raup, 177 Pa. 396.

It is true the county collected taxes on 400 acres in Cogan House township from the Elk Tanning Company, defendant in this case, but it is not proven anywhere in this case that the county knew or was led in any way to believe that this 400 acres in Cogan House township was the same that it had purchased at treasurer's sale in 1894, located in Lewis township. It has been repeatedly decided in this state that the payment of taxes will not confer title where none exist: Philadelphia v. Raup, 177 Pa. 396; Goodman v. Sanger, 85

Pa. 337; Naglee v. Albright, 4 Wharton, 291; Sorber v. Willing, 10 Watts, 141; Sailor v. Hertzog, 10 Pa. 296; Mayor of Philadelphia v. Riddle, 25 Pa. 259.

Under the evidence in this case the plaintiffs have the right of unrestricted choice of locality: Coxe v. Blanden, 1 Watts, 533; Erwin v. Helm, 13 S. & R. 151; McCord v. Bergautz, 7 Watts, 487.

OPINION BY MR. JUSTICE BROWN, June 22, 1909:

The title upon which the appellees recovered in the court below was acquired by them from a vendee of the county commissioners of Lycoming county, who had purchased the land in controversy on December 1, 1894, at a county treasurer's sale for unpaid taxes levied against, it for the year 1893. This land formed part of a tract of 1,100 acres, for which a patent— No. 5,666—was issued by the commonwealth to James Strawbridge on March 8, 1795. The appellants claim title under a tax sale held in the year 1821 for unpaid taxes for the years 1820 and 1821. The case as presented is that of one tax sale title arrayed against another.

The first position of the appellants is that there was no assessment by the township assessor or the county commissioners for the year 1893 of the land embraced in the Strawbridge warrant, No. 5,666, and that even if taxes were levied, legally or illegally, upon it, they were duly paid and discharged by the owner. It appears from the testimony that for the year 1893 the assessor of the township of Lewis, in which warrant No. 5,666 is located, failed to make a return of assessments of unseated lands in that township, but the commissioners of the county made assessments upon such lands for that year. That the assessments made by the commissioners were legal and formed the bases for sales for unpaid taxes is definitely settled. Reference need be made only to Hess v. Herrington, 73 Pa. 438, where, in passing upon this very question, we said: "There was evidence by a record from the office of the county commissioners that the taxes in question were assessed by them. The twenty-first section of the Act of April 12, 1842, P. L. 262, enacts that 'all records of

the county commissioners charging lands as unseated with arrears of taxes, shall be evidence of an assessment.' By the fourth section of the Act of March 13, 1815, 6 Sm. L. 301, it is declared that 'no alleged irregularity in the assessment, or in the process, or otherwise, shall be construed or taken to affect the title of the purchaser; but the same shall be declared to be good and legal.' The act of 1842 makes the record of the county commissioners evidence of an assessment in fact, and the act of 1815, to support the title of the purchaser, cures all irregularities in it. The county commissioners were the officers competent to assess the tax. That no valuation was made or returned, was a mere irregularity. The county commissioners are the board of revision, with power to revise, correct and equalize the valuation of all property taxable by law: Act of July 27, 1842, P. L. 445; Act of April 29, 1844, P. L. 501. It would be no violent presumption if it were necessary to resort to it, that the valuation upon which the assessment was made, was settled by them in their capacity as a board of revision. But it is not necessary. In Hubley v. Keyser, 2 P. & W. 502, Mr. Justice HUSTON, speaking of the act of 1815, says: 'The object was to make the sale and deed confer a title without proof of any one prerequisite, except that the land was unseated, and that a tax was charged by the commissioners, regularly or irregularly; that this tax was unpaid, and the land sold and not redeemed within two years.' In that case, the objection to the sale was, that there was proof that the assessors had not valued or returned the land as unseated for assessment. It was argued there, as here, that the valuation by the commissioners was unauthorized, and the assessment a nullity; but it was held otherwise by the court. Indeed, in citing this case afterwards, in Fager v. Campbell, 5 Watts, 288, Chief Justice GIBSON said: 'The tax-book was an official document, and according to Hubley v. Keyser, it was both competent and sufficient to show that the land had been assessed.' Both these cases were prior to the act of 1842. It was, indeed, expressly decided in Devinney v. Reynolds, 1 W. & S. 328, that a tract of unseated land may be sold by the treasurer for the non-payment of taxes upon an assessment

made by the commissioners, without the intervention of the assessors. 'The assessors,' said Mr. Justice ROGERS, 'value the lands, but the commissioners make the assessment; from which it follows that you cannot avoid a sale for taxes, merely because you are unable to prove that the assessors had performed this ministerial duty.' "

There was some question, growing out of apparent alteration of figures in the assessment book, as to the identity of the tract that had been assessed by the county commissioners, whether it was 5,665 or 5,666, but the jury were definitely instructed that unless they were satisfied by evidence, "clear, precise and indubitable that tract 5,666 had been assessed for the taxes for the year 1893," the plaintiffs could not recover. This is all the defendants could have asked for on the question of the identity of the tract. Whether the taxes that were assessed for 1893 against this tract had been paid by the appellants or Proctor, their grantor, was a pure question of fact, depending upon testimony to which we need not here refer. It is sufficient to say that, though the jury could have found from that of B. S. Bentley that the county of Lycoming had no claim for taxes upon the land that was sold, they were not required to so find in view of the testimony of Updegraff, the deputy county treasurer.

The next contention of the appellants is that the county commissioners had abandoned their title under which the appellees claim, and the latter are now estopped from asserting it. This is based upon the alleged fact that after the county commissioners had purchased the 400 acres of land in Lewis township, they continued to assess and collect taxes upon the same from the appellants. If the evidence disclosed this, the second contention of the appellants might require consideration from us, but there is no evidence showing that the county commissioners ever collected taxes from anyone on the 400 acres of land situated in Lewis township after they purchased the same at the treasurer's sale in December, 1894. The taxes assessed and collected by them from the tract in Lewis township after their purchase in 1894 were upon 700 acres. It is true taxes were assessed and collected from 400

acres in Cogan House township, but there is nothing to show that the county commissioners, in assessing and collecting taxes from this tract, which had been returned by the Cogan House township assessor, knew that the same was a part of the 1,100 acres in the Strawbridge warrant, situated in Lewis township. As long as the assessor of Cogan House township returned 400 acres of land as taxable in that township the county commissioners simply discharged their duty in regularly assessing it and collecting the taxes on it. They were not called upon to satisfy themselves as to the accuracy of this return: Brown v. Hays, 66 Pa. 229. The Elk Tanning Company at all times knew that it was paying taxes upon but 700 acres of land in Lewis township, and that, without any objection from it, the county was collecting from a regular return taxes on 400 acres owned by it in Cogan House township. Under these facts there is no basis for the claim of the appellants that the county of Lycoming or its successors are estopped from asserting title, for it did nothing after December, 1894, as to the 400 acres of land situated in Lewis township. But, aside from all this, Good was a bona fide purchaser, and when he purchased from the county commissioners the records showed a valid sale of the 400 acres to them and nothing subsequently done by them in impairment or abandonment of their title, and his vendees, the appellees, have succeeded to all his rights, which, being legal, cannot be disturbed because of hardship that the appellants may suffer. The law in this proceeding can have no concern with their equities. Titles by tax sales would often become as unstable as water, if equities should be permitted to prevail against them after having been legally acquired.

Taxes were paid upon but 700 acres of the 1,100 acres which the county commissioners assessed for the year 1893. The land was all unseated and it could not, and did not, appear what part of the 1,100 acres was included in the 700 acres; and so of the 400 acres. The right of the vendee was to sell any 400 acres of the tract of 1,100, and the right of the purchaser was to locate the 400 acres wherever he pleased. In Everhart v. Dolph, 133 Pa. 628, the owner of a tract of 276

acres of unseated land, returned and taxed as such as a whole, paid the taxes upon 210 acres thereof only, the same not having been designated as any specific part of the 276 acres. He allowed the remaining sixty-six acres to be sold for the balance of the taxes assessed, and it was held that the purchaser of the tax title had the right to locate his purchase upon such part of the whole tract as he might choose. The right to so locate was the right acquired by the county commissioners when they became purchasers of the tract in controversy. They acquired everything that an individual purchaser could have acquired, and whatever they acquired passed to their vendee and through him to the appellees. Sales for unpaid taxes are purely statutory, and no act of assembly makes any distinction in the rights of purchasers, whether they be individuals, corporations or the representatives of the county compelling the sale.

Whether the right of election had been exhausted by a prior location, different from the one claimed by the appellees, was a question for the jury and was properly submitted to them as such. All of the assignments of error are overruled and the judgment is affirmed.