## Gretok Petition

*Gilbert E. Caroff*, for petitioner.

*Gustave S. Margolis*, for respondent.

McDONALD, J., July 14, 1969.—This matter is before the court on a petition for rule to show cause why a private sale of land acquired by the county commissioners at treasurer's tax sale should not be set aside. The facts have been stipulated, and it is agreed by the parties the case may be disposed of on a rule to show cause why the sale of a portion of the land should not be set aside.

George W. Lambert et ux. were owners of a tract of land situate in Lower Yoder Township, Cambria County, and assessed as "No. 390103, Geo. W. Lambert, 5 acres." It was sold at treasurer's sale to the commissioners of Cambria County on October 25, 1962, for the 1959 taxes. In 1961, two assessments, covering part of the five-acre tract, "No. 392140, George W. Lambert, irreg.," and "No. 390103, Geo. W. Lambert, Adeline Ave., 120 x 140," were placed on the

assessment books. In 1963, two other assessments, "No. 392224, George W. Lambert, 680 x 256," and "No. 392225 George W. Lambert, 660 x 140," comprising the balance of the tract, were added to the assessment list. On October 14, 1964, the former two were sold to the county commissioners at treasurer's sale for the 1961 taxes, and on October 14, 1966, the latter two were sold at treasurer's sale to William M. Gretok, Jr. (herein referred to as "petitioner") for the 1963 taxes.

Petitioner has paid the taxes accrued against the parcels he purchased for the years 1963-68.

In 1968, the commissioners petitioned the court of common pleas for approval of a proposed sale to Gustave S. Margolis, Esq., agent for Zucco Realty Company (respondent herein) of the parcels assessed as, No. 390103, Geo. W. Lambert, five acres, No. 392140, George W. Lambert, irreg., and No. 390103, Geo. W. Lambert, Adeline Ave., 120 x 140. At the hearing on the proposed sale, a third party made bids, and the property was struck down to Margolis on his final bid of $4,050. A final decree approving the proposed private sale was entered by the court on March 29, 1968. Subsequently, Margolis conveyed the premises to the respondent. The petition, order and deeds described the land as four parcels, (C) and (D) being the two in dispute.

The commissioners, Gustave S. Margolis, Esq., and the respondent, prior to the private sale, had knowledge of the above mentioned treasurer's sale to petitioner.

On April 25, 1968, the respondent, through its attorney, paid the county treasurer the amount of $152.64 for redemption of assessment nos. 392224 and 392225. This amount included the taxes for 1963-1966, the costs, and 15 percent penalty on the

amount paid by the petitioner at the treasurer's sale in 1966. However, it is stipulated the amount of taxes, interest, penalties and costs paid by the petitioner, which included the 1967-68 taxes paid to the local collector, was $180.20. The redemption money was refused by the petitioner.

After the private sale which was made without notice to petitioner, and within the term, petitioner filed his petition for a rule to show cause why that portion of the sale covering the parcels assessed as nos. 392224 and 392225 should not be set aside. An answer was filed, the facts stipulated and the matter argued before the court en banc. While there may be doubt of the procedure employed to bring this matter to issue (Hughes v. Farrell, 181 Pa. Superior Ct. 555), both parties having consented to the rule proceeding and the facts being stipulated, we shall decide it as a matter of law.

The visceral issue raised by the petitioner is that of abandonment of title acquired by the county commissioners at the 1962 treasurer's sale. He contends the commissioners, by assessing part of the property, that which is in dispute, and accepting taxes levied against it for the years 1963-68, have abandoned, or been divested of, the title they acquired by purchase of the five-acre tract in 1962 for the 1959 taxes.

Respondent argues there was no abandonment; only an irregularity in assessing the property, and the title to the disputed portion vested in it by virtue of redemption after it had acquired the commissioner's title in 1968 by private sale.

The Act of May 29, 1931, P.L. 280, sec. 16, as amended, 72 PS §5971p, requires the county commissioners, after purchase of land at treasurer's sale, to list it in a record book (a) by name of person in which sold, (b) with a brief description and (c) the amount

of taxes, interest and costs for which it was sold. While it remains the property of the county, it may not be charged in the duplicate. However, the charges for taxes which would have been assessed against the land must be entered in a separate column of the record book maintained by the commissioners.

In our opinion, the assessment in 1963 of part of the land sold to the commissioners in 1962, the treasurer's sale to petitioner in 1966, and acceptance of taxes thereon, divested the commissioners of their title: Hunter v. Albright, 5 W. & S. 423; Diamond Coal Company v. Fisher, 19 Pa. 267; Schreiber v. Moynihan, 197 Pa. 578; Feltz v. The Natalie Anthracite Coal Company, 203 Pa. 166; Dorr R. Cobb v. Geo. B. Barclay, 9 Pa. Superior Ct. 573; Campbell v. Warden, 46 D. & C. 465.

In Hunter, a tract of 100 acres, which included the 70 acres in dispute, was sold to the county commissioners by the treasurer in 1830 for the 1821-22-23 delinquent taxes. On June 11, 1838, the county commissioners, at public sale, conveyed this tract to defendant. On June 11, 1838, a 200-acre tract, which included the 70 acres aforementioned, was sold by the county treasurer to plaintiff for the 1834-35 taxes. In this ejectment action, judgment was directed for plaintiff, and on appeal it was affirmed. The court stated, at page 426,

". . . that by taxing that part of the land (70 acre parcel) within the lines of the junior survey (100 acre parcel) while they (the Commissioners) were the owners of it, which was included within the elder survey (200-acre tract) as part and parcel of the latter, they must be considered as thereby disclaiming all right which otherwise they might have had under the purchase (of 1830), to that part of the land surveyed under the junior warrant, which had been previously

surveyed under the elder warrant." (Parentheses supplied.)

The court reasoned the commissioners could not assess and receive taxes at a subsequent treasurer's sale and then convey the title acquired at a previous tax sale.

"Such conduct on the part of an individual would most unquestionably be condemned as unjust, and no one can doubt that the county, which is a corporate person, and acts by its commissioners, who are its representatives, is bound by the same rules and principles that govern individuals in their dealings with each other": pages 426, 427.

In Diamond Coal Company v. Fisher, supra, an ejectment action, the tract in dispute was sold to the county commissioners in 1820 for the 1818-19 taxes. It was reassessed and sold at treasurer's sale to plaintiff's predecessor (Hautto) in 1824 for the 1821-22-23 taxes. In 1830, the heirs of the owner prior to the 1820 sale redeemed, and by subsequent conveyances the title vested in defendants. It was held, in view of the 1824 sale, the redemption in 1830 was "good for nothing": Page 273. Although the word "abandonment," as used in later cases was not used here, the court made it clear the commissioners were divested of their title by the conveyance to a bona fide purchaser at the subsequent treasurer's sale. The language is more in the nature of an estoppel, as on pages 271-72,

"It is pure and self-evident morality, and therefore plain law, that no one shall lead another to do an act, and then claim, for his own benefit, that that act was unlawful or invalid; in other words, no man shall take advantage of his own wrong. Thus, when a man sells land which he does not own, and afterwards acquires the title; while when he acts as agent

in selling his own land as the property of another; or when he sees his own land offered for sale as the property of another, and encourages the sale of it, he shall never be allowed to use his own title to the injury of the person whom he has misled: . . .

"And there is another kindred principle, the justice of which is equally obvious; that he who voluntarily accepts the benefit of a transaction, does thereby become a party to it; and shall not afterwards be allowed for his own profit, to allege its invalidity: . . ."

The rule of divestiture of a title acquired by county commissioners was strengthened in Schreiber and Feltz, although we think inappropriately referred to as an "abandonment." In Schreiber, the court stated, at page 581:

"The assessment of the land after the sale in 1884, and its sale in 1888 and 1890 for taxes, was clearly an abandonment by the county of its purchase in 1884: Hunter v. Albright, 5 W. & S. 423; Diamond Coal Co. v. Fisher, 19 Pa. 267; Cobb v. Barclay, 9 Pa. Superior Ct. 573."

In Feltz, the land was sold to the commissioners at treasurer's sale in 1828, subsequently assessed, and again sold in 1842 to defendant's predecessor in title. Later, the commissioners conveyed to plaintiff's predecessor in title. In the ensuing ejectment action, a verdict was directed for defendant, and affirmed by the Supreme Court, which cited Schreiber as controlling. Subsequently, the same issue was litigated in the Federal courts, and a like verdict returned: Murphy v. Packer, 152 U.S. 398.

That the rule is still viable is evident in a dictum in the opinion of Albert v. Lehigh Coal & Navigation Company, 431 Pa. 600. In that case, a quiet title proceeding, plaintiffs had acquired title by various con-

veyances beginning with a tax sale to the county commissioners in 1870 while the land was assessed to defendant. The evidence proved defendant had paid the taxes on which the 1870 sale was based, but they were erroneously credited to another tract. Subsequently, parcels having been sold from the whole, the tract was assessed at a different acreage, but defendant continued to pay the taxes until the quiet title proceeding revealed the tax title of 1870 upon which plaintiff relied. Although the court held the 1870 sale was void, since the taxes had been paid, in commenting on the acceptance of taxes by the county after the sale in 1870, it cited Schreiber and Feltz, at page 613: "The acceptance of such tax payments by the county may well be deemed an abandonment of its purchase at the 1870 tax sale." From this dictum, it appears not only assessment and a subsequent treasurer's sale is an abandonment, but also acceptance of taxes for a long period of time (in Albert, it was approximately 80 years) may bring about a like result. This would appear to be an extension of the rule, albeit by dictum, in the abandonment cases referred to above.

In support of its position that the assessment and subsequent treasurer's sale to petitioner did not divest the commissioner's title, respondent relies principally on two cases: City of Philadelphia v. Raup, 177 Pa. 396; and Gamble v. Central Pennsylvania Lumber Company, 225 Pa. 288.

In City of Philadelphia v. Raup, supra, the land in dispute was originally situate in Northumberland County, under a warrant to one Johnston Besley, 400 acres, and later patented to Robert Morris. In this ejectment action, plaintiff claimed under the Morris patent. In 1813, Columbia County was ejected from Northumberland County, and the land in question was

thereafter situate in Columbia. The act creating Columbia provided Northumberland could sell land for taxes delinquent prior to the transfer of jurisdiction, and in 1816 the treasurer of Northumberland sold the land in question to the commissioners for delinquent taxes. No taxes were paid on the land, and in 1840 it was sold by the treasurer of Columbia for the 1838-39 taxes. Northumberland redeemed in 1841. In 1874, the commissioners of Northumberland sold to Goodman, predecessor in title to defendant. Plaintiff and its predecessors paid taxes on the land for nearly 50 years. The Supreme Court, in holding the tax title based on the treasurer's sale of 1816 was superior, decided the evidence was insufficient to show (1) a redemption of the 1816 sale, or (2) an adverse possession.

We fail to see how this case, as argued by respondent, stands for the proposition that assessment and collection of taxes after sale of land by the treasurer to the county is a mere irregularity and subject to correction. Respondent argues the property was placed back in assessment after the tax sale of 1816, sold by the treasurer and redeemed by the county. The difference from the case at bar, however, is this: the property was not assessed by Northumberland County, but rather by Columbia County, where it was situate from and after 1813. It is clear in this case and a preceding action on the same title (Goodman v. Sanger, 91 Pa. 71, 76), Northumberland redeemed as an individual owning land in another county, and not as a sovereign. The issue of abandonment was not, and could not, have been raised under these circumstances. The pivotal questions as revealed by review of the opinion were redemption from the 1816 sale and title by adverse possession.

In Gamble, also an ejectment action, the treasurer's

sale to the commissioners, under which plaintiff claimed, was in 1894. Defendant claimed through a treasurer's sale in 1821. The issue was the identification of the land. According to defendant, its purchase in 1821 included the parcel sold in 1894. The jury decided, however, the parcel had not been assessed or taxes paid thereon by defendant since it was located in a different township. Defendant claimed there was an abandonment by assessment and collection of the taxes after the sale to the commissioners, but the court held there was no evidence to support its contention that taxes had been assessed against the property after the 1894 sale. In discussing this issue, the court agreed with the abandonment rule above discussed, when it stated at page 294:

"If the evidence disclosed this, the second contention of the appellants might require consideration from us, but there is no evidence showing the county commissioners ever collected taxes from anyone on the 400 acres of land situated in Lewis Township after they purchased the same at the treasurer's sale in December, 1894."

Respondent argues Hunter, Diamond Coal Co., Moynihan, Feltz and Cobb are not ruling under the facts here, since there was no effective redemption in any of those. It was pointed out in Diamond Coal Company that even though the commissioners abandoned, or were divested of, their title acquired at an earlier treasurer's sale, their action of reassessing and collecting taxes by a second treasurer's sale could not affect the right of the former owner, or someone on his behalf, to redeem.

In Hunter, Moynihan and Feltz, the time within which redemption could have been made by the former owner had expired before the second treasurer's sale and, therefore, the title of the purchaser at that sale

was absolute, as was the commissioners' at that time. However, in Diamond and Cobb the period of redemption after the sale to the commissioners had not lapsed when the second sale occurred, and, therefore, the purchaser's title was subject to the right of the former owner to redeem until the redemption period had expired. Thus, in Diamond Coal Company, it was 1825, or five years after the 1820 sale, and in Cobb, it was 1895, or five years after the 1890 sale to the county.

Nor may the commissioners, in effect, extend the redemption period by accepting payment from the owner, his assignee, or someone in his behalf after its expiration, when a treasurer's sale intervenes, and even though the attempted redemption is made within two years of the latter sale: Brew v. Sharer, 42 Pa. Superior Ct. 89. In that case, the sale to the commissioners was made in 1898, and the second treasurer's sale to an individual was in 1900. An assignee of the owners, prior to the 1898 sale, was allowed by the commissioners to redeem both sales in 1902, within two years of the last sale. The court held the period for redemption began on the date of the treasurer's sale to the commissioners, expired two years later and the sale in 1900 vested the commissioners' title in the purchaser.

We conclude the title acquired by petitioner at the treasurer's sale in 1966, which was after the redemption period of the 1962 sale to the county commissioners, was similar to that acquired by the purchasers in Hunter, Moynihan and Feltz.

Respondent argues it had a right to redeem within two years of the 1966 sale to petitioner for the following reasons: (1) It was successor to the title acquired by the commissioners at the 1962 treasurer's sale and, therefore, could exercise the commissioners' right of redemption from the sale of disputed land in 1966;

(2) it was "a real party in interest . . . not stranger to the title"; (3) as an adverse claimant it could redeem for the benefit of the "true owner."

The first reason is premised upon the right of the commissioners, who acquired title to land at a treasurer's sale and allowed it to be sold at a second treasurer's sale, to redeem from the latter within two years. It seems almost too obvious for discussion that the county is not entitled to redeem under the Act of May 29, 1931, P. L. 280, as amended, 72 PS §5971i and §5971o. From what would it redeem? As sovereign it does not tax itself; nor is its property listed on the tax rolls for this purpose. The treasurer's sale transfers title, at first inchoate and then absolute, to the commissioners. The right of redemption is a creature of statute for the benefit of the owner, his heirs, lien creditors, etc., or others interested, "for the benefit of the owner thereof," until the land is sold by the commissioners. There is no provision in the redemption statutes which gives the commissioners a right to redeem from a subsequent treasurer's sale when they have reassessed the land. Thus, respondent could not have acquired the commissioners' right as "owner" to redeem from the tax sale of 1966, since there was no such right. It would seem a gross injustice to permit commissioners who have acquired title to land at treasurer's sale to reassess for the purpose of collecting taxes, allow it to be sold at a second treasurer's sale to a bona fide purchaser, thus recovering the taxes, and then to void their act by selling the same land to another purchaser, or, as here argued, to give the latter the right to destroy the former's purchase by a redemption. We hearken to the words of our early justices that to permit such conduct would be "unjust" (Hunter), "immoral" (Diamond Coal Company), and that the commissioners are bound "both in morals and equity" by the treasurer's sale (Cobb).

We see no merit in respondent's contention it is entitled to redeem as "a real party in interest . . . not stranger to the title." Interest alone does not create a redemption right; it must be such an interest as would, under the statutes, give that right. It must derive from the owner, or someone through him, as, for instance, an heir, representative, assignee or lien creditor. The owner is one who has some claim of ownership at the time of sale (here, in 1962), or who has acquired through assignment, sale, credit, devise, descent, etc., the owner's right of redemption. A sale by the county after the expiration of the redemption period destroys this right, and the title of one who purchases from the county does not create an interest which would support a redemption.

Equally without merit is the argument respondent is an adverse claimant, and, therefore, its redemption enures to the benefit of the "true owner." This argument is rather contradictory. Respondent seems to be saying, if it can't claim title for itself as successor to the commissioners' right to redeem, then its redemption is for the "true owner" (presumably George W. Lambert ex ux., the record owners). This is not the theory of respondent's case and is clearly precluded by the answer to the petition. Nor did George W. Lambert et ux. on April 25, 1968, the date the redemption money was paid, have a right to redeem: Diamond Coal Company, supra; Cobb v. Barclay, supra; Brew v. Sharer, supra.

Several peripheral issues have been raised by petitioner, which, in view of our ruling, will be discussed only briefly.

Petitioner contends, as an interested party, he was entitled to notice of the private commissioners' sale. A review of the statute governing private sales indicates the commissioners complied with its provisions. It requires notice of the hearing to the taxing authorities

having claims against the land and also notice by publication. There is no provision that notice of the petition for private sale and hearing thereon be given to one who claims title by a previous treasurer's sale. The commissioners convey only that which they have, and, obviously, if it has been previously conveyed there is no necessity for notice to the purchaser.

It is also contended the attempted redemption was not effective, since respondent paid only $152.64 to the treasurer, whereas the amount of taxes, interest and costs, plus 15 percent of the taxes paid, totals $180.20. The difference is represented by the 1967 and 1968 taxes paid to the local collector by petitioner. At the time the money was paid to the treasurer by respondent, only the 1967 taxes had been paid. Notwithstanding, respondent paid the amount stated by the treasurer's statement, and if the redemption had been effective we are satisfied the fact it did not include the 1967 taxes, and the 1968 taxes later paid, would not defeat redemption: Abraham Bubb and Alexander H. McHenry v. Edward Tompkins, 47 Pa. 359.

In view of the foregoing discussion, we conclude the sale by the Cambria County Commissioners to Gustave S. Margolis of parcels assessed at nos. 39224 and 39225 must be set aside and the redemption held ineffective.

Accordingly, we make the following:

## ORDER

Now, July 14, 1969, after argument and upon consideration of the stipulated facts, record and briefs, it is hereby ordered, adjudged and decreed:

1. The rule to show cause why the private sale by the Cambria County Commissioners of two parcels of land situate in Lower Yoder Township, Cambria County, assessed at nos. 39224 and 39225, should not be set aside, is made absolute, and the sale of said parcels is hereby set aside and declared null and void.

2. The final decree of this court, dated March 29, 1968, is hereby modified by deleting therefrom approval of the sale by the commissioners of the following:

"All those certain lots or pieces of ground situate in Lower Yoder Township, Cambria County, bounded and described as follows:

"Fronting 680 feet on the Northerly side of Arlington Avenue and extending back between parallel lines a distance of 256 feet to Fairview Avenue; having Lot No. 26 on said plan on the Easterly side and Lot No. 44 on said plan on the Westerly side; and being marked, known and numbered as Lots Nos. 27 to 43 inclusive on said Clark C. Grazier Estate Plan of Lots.

"Fronting 660.82 feet on the Westerly side of Lois Street and extending back 140 feet, more or less, to a sixteen foot wide unnamed alley in the rear; having Roy Avenue on the Northerly side, and an unnamed avenue or street on the Southerly side, and being marked, known and numbered as Lots Nos. 206 to 218, inclusive, on said Clark C. Grazier Estate Plan of Lots situate in Edgewood."

3. The Treasurer of Cambria County shall strike from treasurer's sales ledger vol. 11, p. 12, the notation dated April 25, 1968, of the redemption by Gustave S. Margolis and shall enter thereon an appropriate notation of this order.

4. A notation of this order shall be entered on the margin of the deed of the Cambria County Commissioners to Gustave S. Margolis, recorded in the office of the recorder of deeds in deed book vol. 853, p. 572.

5. A notation of this order shall be entered on the appropriate record of land sales in the commissioners' office.

6. The costs of this proceeding shall be paid by the respondent.